UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JEANINE BAMURANGE,                                                    Petitioner,

v.                                                  Civil Action No. 4:26-cv-251-RGJ

JASON WOOSLEY, et al.,

                                                                    Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Jeanine Bamurange's Writ of Habeas Corpus.

[DE 1]. Respondents responded on April 16, 2026. [DE 10]. Petitioner replied on April 20, 2026.

[DE 13]. The parties agree no evidentiary hearing is necessary. [DE 11; DE 14]. This matter is ripe

for adjudication. For the reasons below, this Court **GRANTS** the Petition for Writ of Habeas

Corpus. [DE 1].

**I.      Background**

Petitioner Jeanine Bamurange ("Bamurange") is a 32-year-old native and citizen of

Rwanda. [DE 1 at 22-23]. Bamurange has been present in the United States since November 2022.

[*Id.*]. Bamurange entered the United States without being admitted or paroled. [DE 10 at 59].

Although entering without inspection, Bamurange encountered border patrol agents shortly

thereafter near Sasabe, Arizona. [DE 1 at 23]. She was then issued a Notice to Appear and released

into the interior of the United States. [*Id.*]. Bamurange has since applied for asylum and the

application remains pending. [*Id.*]. Bamurange has resided in Indianapolis, Indiana since her

release into the United States. [*Id.*].

Bamurange has been in detention since July 31, 2025. [*Id.* at 25]. On July 23, 2025,

Bamurange was attending an immigration hearing pursuant to her Notice to Appear. [*Id.*]. At the

hearing in open court, Immigration and Customs Enforcement ("ICE") officials served Bamurange

an I-200 Warrant for Arrest and detained her. [*Id;* DE 10-3 at 74]. Shortly after her detention, she was transferred to Grayson County Jail in the Western District of Kentucky where she has remained since. [DE 1 at 25]. Following her detention, in Bamurange's immigration proceedings, the United States moved to transfer her removal proceedings from standard removal to expedited removal. [*Id.*].

As stated, ICE had issued a Notice to Appear Form I-862. [DE 1-2 at 37]. The Notice to Appear marked Bamurange as an "alien present in the United States who has not been admitted or paroled." [*Id.*]. Not as an "arriving alien." [*Id.*].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. [DE 1 at 13-14].

Bamurange asserts that the United States illegally detained her under Section 1225 the Due Process Clause. [*Id.* at 26-27]. And that this prolonged detention is in violation of her Due Process Rights under the Fifth Amendment. [*Id.*]. Therefore, Bamurange seeks release from her detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether she should remain in custody. [*Id.*].

In response, the United States asserts that Bamurange is "lawfully detained under" Section 1225 as she is in expedited removal proceedings. [DE 10 at 58]. The United States contends that "immigration officials have discretion to place aliens arriving in the United States in either expedited removal proceedings under Section 1225(b)(1) or full removal proceedings." [*Id.* at 60-61].

## II.    DISCUSSION[1]

### A.  Section 1225(b)(2) vs. Section 1226

While the relevant facts are undisputed by the parties, the United States argues Section 1225 applies to Bamurange's detention, not Section 1226. As the Court has previously ruled on this substantive issue, the Court incorporates by reference its reasoning in *Vicen v. Lewis,* -- F. Supp. 3d --, 2026 WL 541171, *2–*9 (W.D. Ky. Feb. 26, 2026) and *Patel v. Tindall*, 810 F. Supp. 3d 824, 831-32 (W.D. Ky. 2025) ("an individual who has been paroled without first having been placed in expedited removal *cannot later be designated for expedited removal*") holding that Section 1226 applies to the Petitioner based on the facts set forth above.

This interpretation of Section 1225(b)(1) is the "best reading of the statute" when considering the "statutory terms and the context of the entire statutory scheme." *Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d 274, 299-300 (E.D.N.Y. 2025). And any other "result conflicts with other aspects of the statute, regulations, Congress's evident purpose, and the ordinary meaning of the statute's words." *Bustos v. Raycraft,* 2025 WL 3022294, *6 (E.D. Mich. Oct. 29, 2025). "In effect, 'when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a.'" *Rodriguez-Acurio,* 811 F. Supp. 3d at 308 (quoting *Aviles-Mena v. Kaiser,* 2025 WL 2578215, *5 (N.D. Cal. Sept. 5, 2025) (citing 8 U.S.C. § 1225(b)); *see also N.Y.V.D. v. Santacruz*, 2025 WL 3786964, *3 (C.D. Cal. Dec. 23, 2025)

---

[1] Neither party asserted any jurisdiction-related arguments. However, the Court has analyzed jurisdiction of remedies in similar circumstances, such as *Edahi*, 2025 WL 3466682, at *2-3 and incorporates its reasoning into this opinion. Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

(holding that when the United States made its decision to parole petitioner into the interior of the country, "it foreclosed expedited removal proceedings for Petitioner.")

Thus, this places a noncitizen, like Bamurange, "outside the mandatory-detention provision" of Section 1225(b)(1). *Bashir K.A. v. Klang,* 2026 WL 452353, *5 (D. Minn. Feb. 17, 2026).

\* \* \*

For the reasons above and incorporated, Bamurange, who has been present in the United States for approximately four years, is not an "arriving alien," after being paroled into the country cannot and be placed in expedited removal. *Patel*, 810 F. Supp. 3d at 831-32 ("an individual who has been paroled without first having been placed in expedited removal *cannot later be designated for expedited removal*"). This fact is acknowledged by her arrest pursuant to the I-200 Warrant which authority arises out of Section 1226. And is also acknowledged in her Notice for Appearance by not marking her as an "arriving alien." Section 1226, not Section 1225 applies to her detention.

### B.  Lawfulness of Current Detention

As stated, Bamurange is detained under Section 1226. The United States contends that because Bamurange is properly detained under Section 1225(b)(2), not Section 1226, and she has not been deprived of any due process. [DE 10 at 63]. Otherwise, the United States does not respond to Bamurange's alleged violation of due process. Because the Court found that Bamurange's detention is guided by Section 1226, the Court must determine whether the continued detention pursuant to Section 1226 is in violation of her Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected

4

by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does not address the merits of her Due Process claim, but instead focuses solely on the legal argument of Section 1225 versus Section 1226 as referenced above.

      1.  Private Interest

It is undisputed Bamurange has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine whether the conditions are indistinguishable from criminal incarceration. *Id.* Bamurange is being detained at Grayson County Jail. [DE 1 at 23-24].

Bamurange previously lived in Indianapolis, Indiana. [*Id.*]. But because of her detention in a separate state, she is away and separated from her family, friends, and coworkers. [*Id.*]. The detention is thus making it difficult for Bamurange to participate in her community, work, and care for others. [*Id.*]. As a result, the first *Matthews* factor favors Bamurange's position.

      2.  Risk of Error

The second factor concerns the risk of the erroneous deprivation of Bamurange's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416-17 (S.D.N.Y. 2025) (holding that "re-detention without any individualized assessment"

establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Bamurange has not had a merits bond hearing, with counsel and evidence. *Id.* (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Bamurange is a flight risk or a danger to the community, nor is it likely they can. Bamurange has no criminal convictions. [DE 1 at 23-24]. And notably, Bamurange was detained at an immigration court proceeding. [*Id.*]. Therefore, it would appear to the Court the only material change within the past year, with respect to Bamurange, is the United States' interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Bamurange's liberty interest, the second *Matthews* factor favors Bamurange.

### 3. United States' Interest

The final *Matthews* factor concerns the United States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 33 (D. Mass. 2025). However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 808 F. Supp. 3d 474, 493 (E.D. N.Y. 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1189 (D. Minn. 2025). Because of that, the Court finds that the third *Matthews* factor also favors Bamurange.

Therefore, the Court finds that all three *Matthews* factors favor Bamurange. The current detention of Bamurange is in violation of the Due Process Clause and the INA.

### III.    Remedy

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 810 F. Supp. 3d at 834-35; *Beltran Barrera v. Tindall*, 2025 WL 2690565, at \*7 (W.D. Ky. Sept. 19, 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Bamurange because of the "unlawful detention" by ICE and the United States for the reasons stated above. Bamurange is not being released because she is detained pursuant to Section 1226. But instead, the Court is ordering her release because of the United States' illegal actions *it undertook* in Bamurange's detention. *Hyppolite*, 808 F. Supp. 3d at 495 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of her release stemming from the "unlawful detention" in violation of her due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ before any re-detention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ may consider the non-exhaustive list of factors set out in *Matter of Guerra* 24 I. & N. 37, 40 (BIA 2006). Courts across the country have routinely held this procedure proper. *Alonso v. Tindall*, 2025 WL 3083920, at \*9 (W.D. Ky. Nov. 4, 2025); *Lopez-Campos*, 797 F. Supp. 3d 771, 785-86 (E.D. Mich. 2025); *Mboup v. Field Off. Director of N.J.*, 2025 WL 3062791, at \*2 (D.N.J. Nov. 3, 2025); *Espinoza v. Kaiser*, 2025 WL 2675785, at \*11 (E.D. Cal. Sept. 18, 2025); *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, \*6 (N.D. Cal. Aug. 21, 2025); *Munoz Materano*, 804 F. Supp. 3d at 421.

.

7

Bamurange's procedural due process rights are not violated by the fact she is detained. "Rather, [Petitioner's rights] are violated because [s]he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *12 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado v. Baker,* 2025 WL 2968042, *9-10 (D. Md. Oct. 21, 2025); *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, [s]he is in federal custody in violation of federal law.")

Because Bamurange is being detained pursuant to Section 1226, relevant regulations entitle her to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Bamurange with the "full [due] process" under Section 1226, the United States must provide Bamurange with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

## VI.    Conclusion

For the reasons stated above, the United States has violated Bamurange's due process rights. The Court **GRANTS** Bamurange's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.    The United States is directed to release Petitioner Bamurange immediately because of the unlawful detention in violation of her due process rights.

II.    The United States must provide her with a bond hearing before a neutral IJ pursuant to Section 1226.

III.    The United States must certify compliance with the Court's order by a filing on the docket **by May 9, 2026.**

May 8, 2026

Rebecca Grady Jennings, District Judge
United States District Court

8